UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO HERNANDEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>    Defendants. | Case No. 20-cv-01183-AGT<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

Ricardo Hernandez alleges that during a stolen-vehicle stop, two police officers used excessive force to arrest him, two supervising officers failed to intervene, and Contra Costa County implicitly condoned the incident. The force-using officers answered the complaint, but the supervising officers and the county have moved to dismiss. Their motion is denied.

Hernandez maintains that even though he was fully compliant during his arrest (exiting the car with his hands raised and walking backwards towards one of ten officers on the scene) an officer placed him in a carotid hold until he lost consciousness, and then the same officer struck him in the head six times with a flashlight and threatened to shoot him, while another officer hit him with a flashlight multiple times in the shoulder area. *See* ECF No. 15, FAC ¶¶ 11–23. Hernandez alleges that two supervising officers "were on the scene" at the time, "specifically observed" this use of force, and "did not intervene to prevent or stop" it. *Id.* ¶¶ 22, 38.

At this stage in the case, these factual allegations must be accepted as true and reasonable inferences must be drawn in Hernandez's favor. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). When that is done, the allegations plausibly support a predicate excessive-force claim against the two officers who assaulted Hernandez and a claim against the supervising officers who failed to intervene.

Under the Fourth Amendment, police can use force against civilians only "when there is a

need for [it]." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007). Here, at a minimum, there was no need for the officers to strike Hernandez with their flashlights—he was unconscious at the time. The officers who did so plausibly violated his Fourth Amendment rights.

When a police officer violates a person's constitutional rights, fellow officers on the scene have a "duty to intercede" if they have a "realistic opportunity" to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (citation omitted); *see, e.g.*, *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (reversing summary judgment for a police sergeant who admitted that he "observed [other] deputies struggling" with the plaintiff but "did not become involved or give orders" for them to stop). The supervising officers here had such a duty. They were on the scene after the stolen-vehicle stop and observed other officers striking the unconscious Hernandez. They plausibly could have physically intervened or verbally ordered their subordinates to stop.

*Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991), a decision the defendants rely on, is materially distinguishable. In that case, an officer suddenly drew his gun and fired at a suspect. The incident "transpired in a matter of seconds" and the other officers who were present had no reason to anticipate it. *Id.* at 1512. The court thus held that these other officers couldn't be held liable for failing to intervene. Here, in contrast, an officer placed Hernandez in a carotid hold for long enough that he lost consciousness and then two officers hit him more than half a dozen times with their flashlights. It is reasonable to infer that this incident took more than "a matter of seconds;" so even if the supervising officers who witnessed it had no reason to anticipate it, they could have physically or verbally intervened. The § 1983 claim against the supervising officers is pleaded adequately.

So, too, is the § 1983 claim against Contra Costa County. Hernandez alleges that this was not the first time the county's sheriff deputies assaulted an unconscious civilian after using a carotid hold. He maintains that deputies have engaged in this practice "for the last 10 years" and the county "has known" about it. FAC ¶ 50. These allegations support that the county has a "policy of inaction": the it is aware of repeated constitutional violations and has "fail[ed] to implement procedural safeguards" to prevent them. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (citation omitted). Under § 1983, local government bodies can be held liable for

policies of inaction of this kind.  *See id.*

The county insists that the allegations about these similar incidents are too conclusory. What is missing, the county seems to suggest, are specific factual allegations about when these incidents occurred and what exactly happened.  At this stage, that level of detail isn't required.  To be sure, Hernandez must do more than "simply recite the elements" of his claim against the county.  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  But he has done more than that: he has alleged that for a decade, the county has known that its deputies are assaulting unconscious individuals after using carotid holds on them.  These are factual allegations and they must be taken as true at the pleading stage.  *See Retail Prop.*, 768 F.3d at 945.

A complaint must include allegations sufficient "to give fair notice and to enable the opposing party to defend itself effectively."  *AE*, 666 F.3d at 637 (citation omitted).  Hernandez's complaint satisfies this standard.  The motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: June 10, 2020

ALEX G. TSE
United States Magistrate Judge