UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO HERNANDEZ, | Case No. 20-cv-01183-AGT |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S POST-TRIAL MOTIONS** |
| BRANDON HODGES, | Re: Dkt No. 200 |
| Defendant. | |

This case arises out of Ricardo Hernandez's arrest during a traffic stop of a stolen vehicle in Richmond, a city located in Contra Costa County, California, on May 5, 2018. Multiple members of law enforcement from the Contra Costa County Sheriff's Office and the Richmond Police Department participated in the stop, and the driver and three of the vehicle's four passengers were detained without incident. Hernandez, who was a backseat passenger and did not know the vehicle was stolen, was the last occupant taken into custody. During Hernandez's arrest, Contra Costa County Sheriff's Deputy Brandon Battles placed him in what might be perceived as a carotid hold, struck him six times with a metal flashlight, and held a gun to his head and threatened to shoot, all while Hernandez lay unresponsive on the pavement. Richmond Police Officer Brandon Hodges was present during those uses of force and assisted in handcuffing Hernandez. Bodycams worn by Officer Hodges and his on-scene supervisor recorded video and audio of the relevant events.

Following his arrest, Hernandez brought this action under 42 U.S.C. § 1983 against Deputy Battles, Officer Hodges, Contra Costa County, the City of Richmond, and various other defendants alleging, as relevant, that Deputy Battles used excessive force and that Officer Hodges was an integral participant in the excessive force and/or failed to intervene to stop it, in violation

of Hernandez's Fourth Amendment rights.

After a good faith settlement with the Contra Costa County defendants (including Deputy Battles) and numerous voluntary dismissals, the case proceeded to trial against Officer Hodges, the only remaining defendant, on Hernandez's excessive force claim premised on theories of integral participation and failure to intervene.  At trial, Hernandez stipulated that Officer Hodges did not himself use excessive force (he alleged that Deputy Battles did) and his integral-participant and failure-to-intervene theories were submitted to the jury as alternative theories of liability.  On March 11, 2022, the jury returned a verdict in favor of Hernandez, finding that Officer Hodges violated Hernandez's Fourth Amendment rights by failing to intervene in Deputy Battles's use of excessive force during Hernandez's arrest.  The jury awarded Hernandez $250,000 in compensatory damages and $300,000 in punitive damages.

Currently before the Court is Officer Hodges's renewed motion under Rule 50(b) for judgment as a matter of law, and his alternative motion under Rule 59 for a new trial or remittitur. Having considered the parties' briefing, oral argument, supplemental submissions, the trial evidence, and the relevant law, and for the reasons explained below, both motions are denied.

## I.      BACKGROUND

### A.      Factual Background

On May 5, 2018, at approximately 1:00 a.m., dispatch notified Officer Brandon Hodges of the Richmond Police Department ("RPD") that deputies from the Contra Costa County Sheriff's Office were pursuing a stolen Honda Civic in the City of Richmond and needed canine assistance. Officer Hodges, who was patrolling nearby with his police canine, Gunnar, responded to the request and activated his emergency lights and bodycam as he joined the deputies in the pursuit. The pursuit ended a short time later when the Honda's tire blew out and the car slowed to a stop on the right side of a two-lane street.  The pursuing deputies and Officer Hodges parked their patrol cars behind the Honda in staggered formation and prepared to initiate a felony stop.  Around this time, Officer Hodges's supervisor, RPD Sergeant Jennifer Cortez, arrived on scene and activated her bodycam.

Officer Hodges retrieved Gunnar from the back of his vehicle while numerous deputies,

including Deputy Brandon Battles, took position with their guns aimed at the Honda.  Holding

Gunnar in one hand and his gun in the other, Officer Hodges took charge in issuing commands for

the occupants to exit the Honda one-by-one, starting with the driver.  Tr. at 306:7–307:6; Ex. 1,

Hodges Body-Worn Camera ("BWC") at 3:05–3:20.[1]  In an orderly manner that was for the most

part unremarkable, the driver followed by the first three passengers were each ordered out of the

vehicle one at a time by Officer Hodges, and those four individuals were handcuffed by the

deputies and detained in separate patrol cars.  Hodges BWC at 3:05–5:56.  Hernandez, who was

sitting in the rear passenger seat of the Honda, was the last occupant ordered out of the vehicle.  At

the time, Hernandez was 18 years old, 5'8" tall, and weighed 135 pounds.  Tr. at 466:11–13,

479:25–480:5.

Similar to the previous arrests, Hernandez followed Officer Hodges's verbal commands

and walked slowly backwards towards several deputies with his hands raised.  Hodges BWC at

5:58–6:27.  As Hernandez neared the deputies, he briefly attempted to pull up his sagging pants

and immediately returned his hands to the air.  *Id.* at 6:28–6:30.  Deputy Battles then grabbed

Hernandez's raised hands and pulled them down behind his back.  *Id.* at 6:30–6:35.  For the next

approximately twenty seconds, Deputy Battles and Hernandez were out of Officer Hodges's line

of sight due to the positioning of the patrol cars.  *See id.* at 6:36–6:56.  During that time, one of the

deputies began yelling "stop resisting" and "give me your hands."  *Id.* at 6:44–6:56.  Officer

Hodges heard the yelling, returned Gunnar to his patrol car, and "walked over to assess the

situation."  Tr. at 234:17–20, 240:23–24; Hodges BWC at 6:59–7:15.

The first thing Officer Hodges saw was Deputy Battles holding Hernandez on the ground

with his arm around Hernandez's upper chest, applying what may have been a choke hold or a

carotid hold.  Tr. at 241:1–6; *see* Hodges BWC at 7:04–7:35.  Hernandez's right hand was in a

handcuff, but his left arm was underneath his body.  Deputy Battles maintained his control hold on

Hernandez, who lying on the ground not moving or speaking, for roughly thirty seconds while

Officer Hodges and at least three other deputies surrounded them.  Hodges BWC at 7:04–7:35.  As

---

[1] The trial transcript, cited as "Tr.," appears in four volumes at Dkts. 191, 192, 193, and 194.
Exhibits admitted at trial are cited as "Ex."

United States District Court
Northern District of California

1    Deputy Battles applied the control hold, one of the surrounding deputies announced, "he's out,

2    he's out, he's out," but Deputy Battles did not release his grip on Hernandez for another ten

3    seconds.  *Id.* at 7:22–7:35.  Then, as Hernandez lay prone and motionless on the pavement, Deputy

4    Battles repositioned himself near the left side of Hernandez's head and proceeded to strike him six

5    times with a metal flashlight.  *Id.* at 7:37–7:52; Ex. 2, Cortez BWC at 5:12–5:17.  By this time,

6    both of Hernandez's hands were secured in handcuffs.  *See* Tr. at 250:9–14.  Deputy Battles then

7    unholstered his gun and held it to Hernandez's head while shouting, "I will fucking shoot you."

8    Hodges BWC at 7:52–7:56; Cortez BWC at 5:18–5:22.  Officer Hodges was within feet of Deputy

9    Battles during the control hold and he was immediately next to Deputy Battles during both the

10   flashlight strikes and the gun pointing.  *See* Hodges BWC at 7:11–7:58.

11       At trial, Hernandez testified that he has no memory of Deputy Battles's control hold,

12   flashlight strikes, or gun pointing because he was rendered unconscious during those uses of force.

13   Tr. at 605:10–18.  The last thing Hernandez remembered before losing consciousness was a

14   deputy pulling his raised hands down and pushing him against a patrol car and then another deputy

15   abruptly striking him in the side of the face.  *Id.* at 483:1–484:23.  The next thing Hernandez

16   remembered was "waking up on the floor" in handcuffs and feeling pain in his face.  *Id.* at 485:2–

17   486:4, 487:1–12.  Officer Hodges, on the other hand, testified that Hernandez was physically

18   resisting the entire time Officer Hodges was present until the point when both of Hernandez's

19   hands were handcuffed.  *Id.* at 327:18–21.  Officer Hodges also denied hearing the deputy say,

20   "he's out, he's out, he's out" during Deputy Battles's control hold of Hernandez; he admitted

21   hearing but denied seeing Deputy Battles's flashlight strikes; and he denied seeing or hearing

22   Deputy Battles hold his gun to Hernandez's head while shouting, "I will fucking shoot you."  *See*

23   *id.* at 418:3–20.

24       After Hernandez was handcuffed, he was transported via patrol car to the hospital, where

25   he underwent a CT scan of his head, which came back negative.  *Id.* at 487–493.  Photographs of

26   Hernandez taken at the hospital show abrasions and significant bruising on his forehead and face,

27   and Hernandez testified that his pain level at that time "was like a 9, 10-ish" on a scale of one to

28   ten.  *Id.* at 490:22–24 & Ex. 3.  Hernandez was discharged from the hospital a few hours later and

United States District Court
Northern District of California

taken to Contra Costa County jail, where he was released later that day.  Hernandez was charged with a misdemeanor violation of California Penal Code § 148(a)(1) for resisting, delaying, or obstructing a peace officer, but that charge was later dismissed.

### B.    Procedural History

Hernandez filed this action on February 17, 2020, against Contra Costa County, Deputy Battles, and several other Contra Costa County sheriff's deputies who participated in his arrest (collectively, the "Contra Costa County Defendants"), alleging 42 U.S.C. § 1983 claims for Fourth Amendment violations (excessive force, failure to intervene, integral participation, malicious prosecution, and false arrest), Fourteenth Amendment violations (deliberate fabrication of evidence), and *Monell* and supervisory liability.

In August 2020, after surviving a motion to dismiss and subsequently amending to drop his false arrest claim, Hernandez filed a Second Amended Complaint to add as defendants the City of Richmond, Officer Hodges, and Richmond Police Sergeant Jane Doe.[2]  Dkt. 48, SAC.  The SAC remained the operative complaint in the case.  Relevant here, the SAC alleged that Deputy Battles used excessive force during Hernandez's arrest by: (1) placing Hernandez in a carotid hold which rendered him unconscious; and while Hernandez was unconscious and prone on the ground, (2) striking Hernandez in the head six times with a metal flashlight and (3) holding a gun to Hernandez's head while threatening to shoot him.  The SAC further alleged that Officer Hodges was an integral participant and/or failed to intervene in Deputy Battles's uses of excessive force, in violation of Hernandez's Fourth Amendment rights.  Deputy Battles and Officer Hodges each answered the SAC.

Hernandez subsequently reached a settlement with the Contra Costa County Defendants, whereby he agreed to dismiss with prejudice and release all claims against Contra Costa County, Deputy Battles, and all other named sheriff's deputies.  Dkt. 65-1.  The Contra Costa County Defendants were dismissed with prejudice on April 6, 2021.  Dkt. 99.  The City of Richmond and

---

[2] Richmond Police Sergeant Jane Doe was later identified as Sergeant Jennifer Cortez, Officer Hodges's supervisor who was on scene during Hernandez's arrest and whose bodycam recorded the relevant events.  *See* Dkt. 86.

United States District Court
Northern District of California

1   Sergeant Cortez were also voluntarily dismissed with prejudice on March 23, 2021, leaving

2   Officer Hodges as the only remaining defendant.  Dkt. 88.

3          Meanwhile, Hernandez moved for partial summary judgment on his excessive force claim

4   against Officer Hodges.  Dkt. 78.  Hernandez's motion was based almost entirely on his

5   interpretation of the video footage of his arrest from Officer Hodges's and Sergeant Cortez's

6   bodycams.  Hernandez argued that "the footage clearly shows that when Deputy Battles struck

7   [Hernandez] with his flashlight six times and subsequently pointed his loaded firearm at

8   [Hernandez's] head and stated 'I will fucking shoot you' [Hernandez] was laying face down on the

9   floor, unconscious, surrounded and subdued by four members of law enforcement with his right

10  hand secured in a handcuff."  *Id.* at 6.  Officer Hodges opposed Hernandez's motion, arguing that

11  summary judgment was improper because there were "disputed issues of fact regarding whether or

12  not the force used by [the Contra Costa County] deputies was reasonable, and if their use of force

13  was not reasonable whether or not Officer Hodges was in a position to intervene with said

14  deputies."  Dkt. 82 at 8.  The Court denied Hernandez's motion for partial summary judgment,

15  finding that disputed issues of material fact were not directly resolved by the bodycam videos.  *See*

16  Dkts. 104, 105.  Officer Hodges did not move for summary judgment on any claim or issue.[3]

17         Several months later, in September 2021, Officer Hodges moved for judgment on the

18  pleadings under Rule 12(c) on the basis that the SAC implausibly alleged two "mutually

19  exclusive" theories of § 1983 liability—namely, that Officer Hodges was an integral participant in

20  the alleged excessive force and that he also failed to intervene in the same alleged excessive force.

21  Dkt. 119 at 7.  Officer Hodges argued that "both of these theories cannot go to the jury as [sic]

22  together" and requested that the Court order Hernandez to "select and elect which one of these

---

[3] Officer Hodges raised the issue of qualified immunity for the first time in his opposition to
Hernandez's motion for partial summary judgment.  *See* Dkt. 82 at 13.  Despite acknowledging
the existence of a factual dispute regarding whether he "was in a position to intervene" in the
alleged excessive force, Officer Hodges argued that he was entitled to qualified immunity because
Hernandez "cannot identify clearly established law . . . requiring Officer Hodges to intervene
based on conduct that *he did not observe or was not in a position to intervene*."  *Id.* at 20
(emphasis added).  Officer Hodges admittedly did not affirmatively move for summary judgment
on qualified immunity grounds (or any other ground) because, as his counsel explained at the
hearing on the instant post-trial motions, "we felt like there was going to be a big factual issue."
*See* Dkt. 221 at 31:7–14.

United States District Court
Northern District of California

contradictory theories will be presented to the jury." *Id.* at 9.  The Court denied Officer Hodges's

Rule 12(c) motion and allowed Hernandez to proceed to trial on his integral-participant and

failure-to-intervene theories as alternative theories of liability.[4]  Dkt. 124.

### C.     Jury Trial and Verdict

Trial began on March 8, 2022, and lasted four days.  Two witnesses testified: Officer

Hodges and Hernandez.[5]  Several exhibits, including the video and audio recordings from Officer

Hodges's and Sergeant Cortez's bodycams, photographs of Hernandez's injuries taken at the

hospital after his arrest, and various RPD policies were admitted into evidence.

On March 11, 2022, at the close of evidence and before closing arguments, both

Hernandez and Officer Hodges orally moved for judgment as a matter of law under Rule 50(a).

Hernandez argued, as he did at summary judgment, that the bodycam videos conclusively

established that he was unconscious and not resisting during his arrest, that Deputy Battles's uses

of force were therefore excessive, and that Officer Hodges was an integral participant in Deputy

Battles's excessive force.  *See* Tr. at 609–614, 617–619.  Officer Hodges, in turn, argued that he

was entitled to judgment as a matter of law on three main grounds: (1) insufficient evidence that

Deputy Battles's use of force against Hernandez—either the control hold, the flashlight strikes, or

the gun pointing—was unconstitutionally excessive; (2) insufficient evidence that Officer Hodges

was either an integral participant in, or had a realistic opportunity to intervene to stop Deputy

Battles's alleged excessive force; and (3) qualified immunity.  *See id.* at 619–627, 637–640.  The

Court denied both motions and submitted the case to the jury.

During deliberations, the jury sent a note to the Court asking: "Will the defendant have to

pay punitive damages or any damages out of his own pocket."  Dkt. 179.  After conferring with

counsel on the record, the Court provided the following written response to the jury's question:

---

[4] At trial, the jury was instructed that Hernandez's integral-participant and failure-to-intervene theories "are alternative theories of liability.  This means you cannot find Officer Hodges liable on both theories.  Either he was an integral participant or he failed to intervene or he wasn't an integral participant and didn't fail to intervene."  *See* Dkt. 176 (Revised Final Jury Instructions) at 6, Instruction No. 4.

[5] Hernandez attempted to call Deputy Battles as a witness at trial but did not because he failed to properly subpoena Deputy Battles.  *See* Dkts. 166, 167, 168.

United States District Court
Northern District of California

1  "The jury has been instructed on damages and should refer to those instructions.  No further

2  response is appropriate to this question." *Id.*  Both parties agreed to the Court's response, *see* Tr.

3  at 713:1–714:17, and there were no further questions from the jury.

4         Later that afternoon, the jury returned a verdict for Hernandez on his failure-to-intervene

5  claim against Officer Hodges.  The jury awarded Hernandez $250,000 in compensatory damages

6  and $300,000 in punitive damages, for a total award of $550,000.

7         **D.      The Instant Motions**

8         Officer Hodges timely filed the instant motions for judgment as a matter of law under Rule

9  50(b) or, in the alternative, for a new trial or remittitur under Rule 59.[6]  Dkt. 200.  In his Rule

10  50(b) motion, Officer Hodges argues that he is entitled to judgment as a matter of law because the

11  jury's verdict is not supported by sufficient evidence and because he is entitled to qualified

12  immunity.  In his alternative Rule 59 motion, Officer Hodges argues that he is entitled to a new

13  trial because the jury's verdict is against the clear weight of the evidence, because there were

14  multiple instances of unfair prejudice which denied him a fair trial, and because the compensatory

15  damages award is excessive and there is no evidence to support any punitive award.  During the

16  hearing on the motions, the Court requested supplemental briefing on the issue of qualified

17  immunity.  Upon receiving the requested supplemental briefing in December 2022, the Court took

18  the motions under submission.  For the reasons explained below, both post-trial motions are

19  denied.

20  **II.    RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

21         "A renewed motion for judgment as a matter of law is properly granted only 'if the

22  evidence, construed in the light most favorable to the nonmoving party, permits only one

23  reasonable conclusion, and that conclusion is contrary to the jury's verdict.'"  *Castro v. Cnty. of*

24  *Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (citation omitted).  "A jury's verdict

25  must be upheld if it is supported by substantial evidence." *Id.*  Substantial evidence means

26

27  _____

28  [6] Hernandez also filed a motion for statutory attorney's fees pursuant to 42 U.S.C. § 1988.  Dkt.
196.  The Court granted Officer Hodges's request to stay briefing on the fee motion pending
resolution of the instant post-trial motions.  Dkt. 199.

United States District Court
Northern District of California

"evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). When evaluating a Rule 50(b) motion, "the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). "While the court must review the entire evidentiary record, it must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Harper*, 533 F.3d at 1021. "If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict." *Id*. There is no dispute here that the jury was properly instructed.

In his renewed Rule 50(b) motion, Officer Hodges seeks judgment as a matter of law on two grounds. First, he argues that there was insufficient evidence at trial to support the jury's verdict in favor of Hernandez on his failure-to-intervene claim. Second, he argues that he is entitled to qualified immunity. The Court disagrees on both grounds.

### A. Sufficiency of the Evidence

The jury unanimously found that Officer Hodges violated Hernandez's Fourth Amendment rights by failing to intervene in Deputy Battles's use of excessive force during Hernandez's arrest. As the Ninth Circuit has explained, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)). "If an officer fails to intercede, 'the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who' performed the offending action." *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021) (quoting *Koon*, 34 F.3d at 1447 n.25). Thus, "an officer who failed to intercede when

9

his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." *Id.*  However, officers can be held liable for failing to intervene only if the officer had a "realistic opportunity" to intervene.  *See Cunningham*, 229 F.3d at 1290.  Similarly, if an officer was not aware of the constitutional violation as it happened, that unaware officer cannot be held liable.  *See Tobias*, 996 F.3d at 584 (9th Cir. 2021); *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029–30 (9th Cir. 2002) (finding no violation of duty to intercede where there was no evidence that the defendant was aware of the constitutional violation as it occurred), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004).

Consistent with this well-settled law, the Court issued the following unopposed jury instruction regarding Hernandez's failure-to-intervene theory of liability:

> Hernandez alternatively contends that Officer Hodges failed to intervene to stop Deputy Battles from using excessive force.  To prevail on this theory, Hernandez must prove the following five elements by a preponderance of the evidence:
>
> 1. Deputy Battles used excessive force against Hernandez.
> 2. Officer Hodges had a duty to intervene.  (Police officers have a duty to intervene to prevent the use of excessive force by a fellow officer.)
> 3. Officer Hodges was aware of a need to intervene.
> 4. Officer Hodges had a reasonable and realistic opportunity to intervene.
> 5. Officer Hodges failed to intervene and Hernandez was injured as a result.
>
> If Hernandez proves each of these elements, you must enter a verdict in his favor.  If Hernandez doesn't prove each of these elements, you cannot hold Officer Hodges liable for failing to intervene[.]

Dkt. 176 at 8, Instruction No. 6.

In his Rule 50(b) motion, Officer Hodges challenges the sufficiency of the evidence as to three of these elements.  Specifically, he argues that Hernandez failed to present legally sufficient evidence to support the jury's findings that: (1) Deputy Battles used excessive force against Hernandez, (2) Officer Hodges was aware of a need to intervene, and (3) Officer Hodges had a realistic opportunity to intervene.  The Court addresses each in turn.

United States District Court
Northern District of California

### 1.    Excessive Force by Deputy Battles

Substantial evidence supports the jury's finding that Deputy Battles violated Hernandez's Fourth Amendment right to be free from excessive force.  "Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances."  *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  To determine whether an officer used excessive force, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397; *see id.* at 396 (explaining that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").  This determination requires balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396 (internal quotations and citation omitted).  That is, courts must "balance the amount of force applied against the need for that force."  *Bryan v. MacPherson*, 630 F.3d 805, 823–24 (9th Cir. 2010) (citation omitted).  To do this, courts "weigh three non-exclusive factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'"  *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017) (alteration in original) (quoting *Graham*, 490 U.S. at 396).  When these *Graham* factors "do not support a need for force, '*any* force used is constitutionally unreasonable.'"  *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Lolli v. Cnty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003)); *see Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (reiterating that "it is the need for force which is at the heart of the *Graham* factors") (citation omitted).

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that . . . judgment as a matter of law in excessive force cases should be granted sparingly."  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (first alteration in

1    original) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).  "This is because such

2    cases almost always turn on a jury's credibility determinations."  *Id.*  This case is no different.

3         Given the jury verdict for Hernandez, he is "entitled to have the evidence viewed in a light

4    most favorable to [him], resolving conflicts in [his] favor and giving [him] the benefit of

5    reasonable inferences, to determine whether substantial evidence supported the verdict."  *Harper*,

6    533 F.3d at 1016 (citation omitted).  Applying that standard and the *Graham* analysis here, there is

7    sufficient evidence to support the jury's finding that the force used by Deputy Battles—placing

8    Hernandez in a control hold with enough pressure to render him unconscious, then striking

9    Hernandez six times with a metal flashlight as he lay face-down on the ground, then holding a gun

10   to Hernandez's head while yelling, "I will fucking shoot you"—was unconstitutionally excessive.

11        As to the nature and quality of the intrusion, both the control hold and the overhand

12   flashlight strikes were "capable of inflicting significant pain and causing serious injury," and as

13   such "are regarded as 'intermediate force' that, while less severe than deadly force, nonetheless

14   present a significant intrusion upon an individual's liberty interests."  *Young v. Cnty. of Los*

15   *Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011).  Such force "may be used only when a strong

16   governmental interest warrants its use."  *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir.

17   2001).  Likewise, "pointing a loaded gun at a suspect, employing the threat of deadly force, is use

18   of a high level of force."  *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (citation omitted).

19        As to the government interests at stake, each of the three *Graham* factors supports the

20   jury's finding that Deputy Battles's use of such force was unnecessary and excessive under the

21   circumstances.  First, there is no dispute that Hernandez was a backseat passenger in the stolen

22   Honda and was not suspected of a serious crime.[7]  While Hernandez was charged with resisting,

---

[7] Deputy Battles and the other officers on scene may have had reason to suspect the *driver* of the Honda, Victor Perez, of vehicular theft, an "arguably severe" crime, *see Green*, 751 F.3d at 1050, and evading the police.  As Officer Hodges explained at trial, following a police chase of a stolen vehicle, everyone in the vehicle will be temporarily detained until the police complete their investigation, but the driver is the only occupant who is under arrest at the time because, as far as the police know, "the driver is the only one that committed a crime"—evading the police.  *See* Tr. at 424:1–19.  During the traffic stop in question, the driver was the first occupant ordered out of the stolen vehicle, and he was taken into custody by Deputy Battles.  *See id.* at 425:6–13.  Thus, Deputy Battles could not have reasonably believed that Hernandez, who was seated in the rear passenger seat and was the last occupant ordered out of the vehicle, was the driver.

delaying, or obstructing an officer in the performance of their duties in violation of Cal. Penal Code § 148—a "minor" misdemeanor offense which is neither inherently dangerous nor violent, *see Bryan*, 630 F.3d at 828–29—the bodycam videos do not show Hernandez offering any resistance at any point during Deputy Battles's challenged uses of force and indeed, the charge was later dismissed.  In any event, because the nature of Hernandez's purported offense does not suggest "a danger to [officers] or the public such that there would be a heightened interest in the use of force to subdue [Hernandez], the 'severity of the crime at issue' weighs against a finding that the government had an interest in the use of significant force." *Young*, 655 F.3d at 1165.

Second, the evidence at trial supports a finding that Hernandez posed no immediate threat to the safety of the officers or others, the "single most important factor" under *Graham*. *Id.* at 1161.  When assessing this factor, Ninth Circuit "precedent requires that [courts] focus on the *immediate* threat of harm"—that is, courts must "consider the 'danger a suspect poses *at the time force is applied*.'" *Andrews v. City of Henderson*, 35 F.4th 710, 717 (9th Cir. 2022) (citation omitted).  In addition, "the objective facts must indicate that the suspect poses an immediate threat to the officer or a member of the public." *Bryan*, 630 F.3d at 826.  Here, Hernandez testified that he has no recollection of Deputy Battles's control hold, flashlight strikes, or gun pointing because he was unconscious during those applications of force.  The video evidence at trial, viewed in the light most favorable to Hernandez, supports his account and allows a finding that Hernandez was rendered unconscious by Deputy Battles's control hold, and that he was still unconscious during Deputy Battles's subsequent uses of force.  The bodycam footage shows that when Officer Hodges walked over to where Deputy Battles had Hernandez on the ground and locked in the control hold, Hernandez was incapacitated and immediately surrounded by multiple deputies.  Hodges BWC at 7:04–7:22; Cortez BWC at 4:34–4:37.  One of the surrounding deputies then announced, "he's out, he's out, he's out"—which the jury could rationally infer meant that Hernandez, who was not moving or speaking, was in fact "out," i.e., unconscious—and yet Deputy Battles continued to apply the control hold for approximately ten more seconds.  Hodges BWC at 7:11–7:22; Cortez BWC at 4:37–4:48.  Then, as Hernandez lay motionless and face-down on the ground with his right hand in a handcuff, Deputy Battles repositioned himself near the left side of Hernandez's

head and proceeded to strike him six times with a metal flashlight.  Hodges BWC at 7:47–7:52; Cortez BWC at 5:12–5:17.  And then, as Hernandez was still lying motionless and prone on the pavement, Deputy Battles unholstered his gun, held it to Hernandez's head, and shouted, "I will fucking shoot you."  Hodges BWC at 7:52–7:56; Cortez BWC at 5:18–5:22.  The jury reasonably could have concluded that Deputy Battles knew or should have known that Hernandez lost consciousness during the control hold and that he was still unconscious and posing no threat during the flashlight strikes and gun pointing.  There was also no evidence that Hernandez was believed to be armed (he was not) at the time of the incident.  To the extent that Deputy Battles perceived that Hernandez—who was 5' 8" tall and weighed 135 pounds at the time of the incident—posed a threat at the outset of the encounter, any such threat was objectively eliminated by the time Hernandez was subdued in a control hold on the ground and surrounded by multiple officers.  *See Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) ("By the time Jones was prone and surrounded by multiple officers, there would have been no continuing justification for using intermediate force.").  On these facts, a reasonable jury "could readily conclude that the force used [after that point] was far in excess of any safety concerns, reasonably or otherwise, that might have motivated [Deputy Battles's] conduct."  *Young*, 655 F.3d at 1164.

Third, and again viewing the evidence in the light most favorable to Hernandez, Hernandez was not resisting either physically or verbally as Deputy Battles held him on the ground in the control hold, and he was not even capable of resisting during the subsequent flashlight strikes and gun pointing because he was visibly unconscious.  Approximately twenty-three seconds elapsed between the deputy announcing "he's out" and Deputy Battles first striking Hernandez with his flashlight, and at no point during that time does Hernandez appear to move, speak, or offer any indication of consciousness.  *See* Hodges BWC at 7:23–7:46.  And even if Hernandez had resisted at the outset of his encounter with Deputy Battles, "police officers who confront actual (or perceived) resistance are only permitted to use an amount of force that is *reasonable* to overcome that resistance."  *Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007) (noting that even when a suspect "initially

United States District Court
Northern District of California

United States District Court
Northern District of California

1   resist[s] being arrested, [an officer's] punches [a]re not necessarily a reasonable response").  By

2   the time Hernandez was placed in a control hold and rendered unconscious, there was no

3   resistance to overcome.

4       Officer Hodges does not meaningfully address the individual *Graham* factors and instead

5   argues, unpersuasively, that the "evidence presented in this case is insufficient to even render a

6   reasoned decision under *Graham* and its progeny."  Dkt. 200 at 13.  According to Officer Hodges,

7   Hernandez's failure to call Deputy Battles at trial was a "critical evidentiary failure" because "no

8   evidence was presented to the jury about the observations Deputy Battles made prior to and during

9   his use of force, including no body worn camera footage of any County deputies."  *Id.* at 14; Dkt.

10  206 at 6.  But these arguments ignore the evidence that was presented to the jury—including

11  Officer Hodges's and Sergeant Cortez's bodycam recordings which captured video and audio of

12  Deputy Battles's challenged uses of force at close range, and which allowed the jury to draw its

13  own factual conclusions as to the objective unreasonableness of Deputy Battles's conduct.

14      Viewing that evidence in the light most favorable to Hernandez and drawing all reasonable

15  inferences in his favor, there is substantial evidence to support the jury's finding that Deputy

16  Battles's used excessive force against Hernandez in violation of his Fourth Amendment rights.

17              **2.      Officer Hodges's Awareness of a Need to Intervene**

18      There is also sufficient evidence to support the jury's finding that Officer Hodges—who,

19  like all police officers, has "a duty to intercede when [his] fellow officers violate the constitutional

20  rights of a suspect"—was aware of a need to intervene in Deputy Battles's excessive force as it

21  happened.  *Cunningham*, 229 F.3d at 1289; *see Tobias*, 996 F.3d at 584 (recognizing that failure-

22  to-intervene liability requires that the non-intervening officer be "aware of the constitutional

23  violation as it occurred").  Where, as here, the facts regarding an officer's perception and

24  awareness are disputed, "their resolution and determinations of credibility 'are manifestly the

25  province of a jury.'"  *Longoria v. Pinal Cnty.*, 873 F.3d 699, 710 (9th Cir. 2017) (citation

26  omitted); *see Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 344 (5th Cir. 2020) ("[T]he

27  officers argue that there was no time or opportunity for them to intervene and that they could not

28  perceive what Officers Martin and Costa were doing.  But these arguments fall into the category of

factual disputes that a jury must decide.").

Officer Hodges acknowledges that he has an affirmative duty to intervene, under both federal law and RPD policy, if he is present and observes another officer using excessive force.[8] *See* Tr. at 140:6–17, 219:1–22, 299:2–24.  Officer Hodges also admittedly "knew some level of force was happening" during Hernandez's arrest.  Dkt. 206 at 8.  He testified that he saw Deputy Battles holding Hernandez on the ground with "his arm around what appeared to be [Hernandez's] upper chest area, almost -- similar to what we would call a choke hold," and that he heard Deputy Battles striking Hernandez with the metal flashlight.  *See id*. at 241:1–22, 324:4–8.  But Officer Hodges argues that his "uncontroverted testimony was that he never saw any force that he did not think was appropriate for the circumstances" because Hernandez was resisting arrest.  Dkt. 200 at 15; *see also* Tr. at 251:17–21 ("I knew some sort of force was going on with -- from Deputy Battles onto [Hernandez's] upper back, which was appropriate at the time based on [Hernandez] not showing -- one, not showing his hands, but also actively resisting by pulling his hand underneath [his body]"); 261:2–3 ("the force that was being applied that I did hear was appropriate at the time because [Hernandez] was resisting arrest").  Officer Hodges further argues that the "uncontroverted evidence"—namely, his own testimony—demonstrates that he was not aware of a need to intervene because he "was not *fully* aware of the flashlight strikes (his attention was diverted) and was *never* aware of any gun pointing (did not know it occurred until this case was in litigation)."  Dkt. 206 at 8–9 (emphasis added).  According to Officer Hodges, Hernandez "could not counter that testimony" because Hernandez "claimed he was unconscious the entire time Ofc. Hodges was present by the struggle."  Dkt. 200 at 16, 26.  These arguments fail for several reasons.

As an initial matter, the fact that Hernandez testified that he was rendered unconscious during, and thus has no recollection of, the challenged portion of his arrest does not mean that Officer Hodges's testimony regarding his version of the events is "uncontroverted."  If anything,

---

[8] The RPD's "Duty to Intercede" policy was in effect at the time of Hernandez's arrest and requires that "[a]ny officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force."  *See* Ex. 19 at 1 (RPD policy 300.2.1).

1    Hernandez's testimony coupled with the video evidence directly contradicts Officer Hodges's

2    contention that Hernandez was fully conscious and "actively resisting" throughout Deputy

3    Battles's uses of force.  Moreover, the jury was entitled to "disbelieve" Officer Hodges's "self-

4    serving testimony" regarding, among other things, his claimed lack of awareness of a need to

5    intervene, particularly because the video evidence supports the jury's finding otherwise.  *See Tan*

6    *Lam v. City of Los Banos*, 976 F.3d 986, 1000 (9th Cir. 2020); *see also Guy v. City of San Diego*,

7    608 F.3d 582, 588 (9th Cir. 2010) (recognizing "it has long been held that a jury may properly

8    refuse to credit even uncontradicted testimony").

9    　　　　Additionally, as discussed above, the jury could have reasonably found based on the

10   evidence at trial that Hernandez was rendered unconscious during Deputy Battles's control hold,

11   as announced by the deputy saying, "he's out, he's out, he's out," and that he remained

12   unconscious through Deputy Battles's flashlight strikes and gun pointing.  The bodycam videos,

13   viewed in the light most favorable to Hernandez, show Hernandez lying motionless on the

14   pavement for the entirety of Deputy Battles's challenged conduct.  The jury likewise could have

15   reasonably found that Officer Hodges, who observed Deputy Battles holding Hernandez on the

16   ground with "his arm around what appeared to be [Hernandez's] upper chest area, almost --

17   similar to what we would call a choke hold," both heard the surrounding deputy say, "he's out,

18   he's out, he's out," and recognized that Hernandez was actually unconscious.  *See* Tr. at 240:23–

19   241:24:3.  Officer Hodges's own bodycam clearly recorded the deputy saying, "he's out, he's out,

20   he's out," which supports an inference that Officer Hodges heard him too, and Officer Hodges

21   acknowledged that if he did hear another officer say "he's out" during a struggle with a suspect, he

22   would assume that to mean that the suspect was unconscious.[9]  *See id.* at 431:11–15.

23   　　　　Further, with respect to the flashlight strikes, evidence from Officer Hodges himself

24

25   [9] Officer Hodges testified that he did not hear the deputy saying "he's out" during Deputy
     Battles's control hold because, at "almost exactly the same time, watching both body cameras, you

26   can hear me screaming and yelling commands while handcuffing [Hernandez's] left hand."  Tr. at
     418:6–9.  But neither bodycam recorded Officer Hodges (or anyone) "screaming and yelling

27   commands" around the time the deputy said "he's out"—in fact, Officer Hodges's voice cannot be
     heard at all during that portion of the incident.  *See* Hodges BWC at 7:19–7:24; Cortez BWC at

28   4:45–4:50.  Hernandez's counsel highlighted this discrepancy during cross examination, and it
     was for the jury to assess Officer Hodges's credibility.

United States District Court
Northern District of California

indicates that he was acutely aware of the extent of that force as it happened.  Beyond his bodycam video, which shows that he had an up-close (within feet) and direct view of the flashlight strikes, Officer Hodges testified that "at the time, [he] was well aware force was being used" and he "could hear the metal loud and clear." *Id.* at 261:13, 324:6–8.  Officer Hodges further testified that he knew Deputy Battles was striking Hernandez with a metal flashlight because he could hear the "unique sound" of "the battery [] moving around inside." *See id.* at 249:9–18.  And while Officer Hodges testified that "the strikes at the time were appropriate" because Hernandez was resisting arrest and "actually physically pulling away," *id.* at 326: 6–13, the bodycam videos show no such resistance or movement of any kind by Hernandez, and the jury was free to reject Officer Hodges's testimony.

Similarly, with respect to the gun pointing, Officer Hodges's bodycam video shows that he was facing and within arm's reach of Deputy Battles when Deputy Battles unholstered his gun, held it to Hernandez's head, and shouted, "I will fucking shoot you."  Officer Hodges does not dispute that this conduct by Deputy Battles was objectively unreasonable under the circumstances; instead, he asserts, as he did at trial, that he was not aware of a need to intervene because he did not see Deputy Battles point his gun at Hernandez's head or hear him threaten to "fucking shoot." But again, the jury was not required to accept Officer Hodges's testimony, particularly because his own bodycam video supports a contrary finding.

It was ultimately for the jury, not the Court, to decide what Officer Hodges saw, heard, and knew about the actions of Deputy Battles during Hernandez's arrest.  *See Longoria*, 873 F.3d at 710 ("[T]he facts and circumstances within an officer's knowledge . . . are matters of fact to be determined, where genuine disputes of a material nature exist, by the fact finder.") (citation omitted).  The evidence at trial, viewed in the light most favorable to Hernandez, was sufficient for the jury to reasonably conclude that Officer Hodges was aware of a need to intervene in Deputy Battles's excessive force as it happened.  Although Officer Hodges argues otherwise, the Court "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v.*

United States District Court
Northern District of California

18

*Kranovich*, 401 F.3d 1107, 1112–13 (9th Cir. 2005) (citation omitted).

### 3.     Realistic Opportunity to Intervene

Substantial evidence also supports the jury's finding that Officer Hodges had a "realistic opportunity" to intervene in Deputy Battles's excessive force.  *See Cunningham*, 229 F.3d at 1289–90 (noting that an officer must have a "realistic opportunity" to intervene for liability to attach).  As numerous courts have recognized, the realistic opportunity inquiry "almost always implicate[s] questions of fact for the jury: 'Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.'"  *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (emphasis and citation omitted); *see Bunkley v. City of Detroit*, 902 F.3d 552, 566 (6th Cir. 2018) (same); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (same); *see also Perkins v. Contra Costa Cnty. Sheriff's Dep't J-Team*, 2009 WL 688853, at *10 (N.D. Cal. Mar. 16, 2009) (finding "a genuine issue of fact as to whether Defendant Moore had an opportunity to intervene to prevent the use excessive [sic] force" by officers who punched plaintiff "five to twelve times"); *Aguilar v. City of Los Angeles*, 2018 WL 6016278, at *5 (C.D. Cal. Sept. 10, 2018) (finding "a triable issue of fact as to whether Defendants Medina and Pagulayan failed to intercede to stop Melero from punching Aguilar" in the head "two or three times"); *AGG v. City of Hayward*, 2020 WL 6047233, at *12 (N.D. Cal. Oct. 13, 2020) (finding that "whether DeCosta had a reasonable opportunity to intercede to prevent the constitutional injury . . . is a triable question of fact").  Here, too, the realistic opportunity inquiry was for the jury to decide.

It is undisputed that Officer Hodges was in close proximity to Deputy Battles during the approximately fifty seconds in which the control hold, the flashlight strikes, and the gun pointing occurred.  Officer Hodges admittedly observed the control hold and was "well aware" of the flashlight strikes as they happened, and his bodycam video supports a finding that he saw and heard the gun pointing too.  When Officer Hodges first walked over to where Deputy Battles was holding Hernandez on the ground, he took time to "assess the situation, what's going on" and he saw Deputy Battles with his arm around Hernandez's "upper chest area," applying "similar what

United States District Court  
Northern District of California

we would call a choke hold or something similar to that" or "maybe he was doing a carotid [hold]. I don't know."  Tr. at 240:23–241:16.  Approximately fifteen seconds later, as Officer Hodges stood by watching Deputy Battles apply the control hold, a nearby deputy announced, "he's out, he's out, he's out," indicating that Hernandez—who was lying silent and motionless on the ground—was unconscious and that no further force was necessary or appropriate.  Approximately twenty-three seconds later, as Hernandez was *still* lying motionless and face down on the ground, Deputy Battles repositioned himself near Hernandez's head and began striking him hard with a metal flashlight.  *See* Hodges BWC at 7:23–7:46.  After landing six overhand strikes in approximately six seconds, Deputy Battles unholstered his gun, held it to Hernandez's head, and shouted "I will fucking shoot you."  Officer Hodges was within arm's reach of Deputy Battles during both the flashlight strikes and the gun pointing and he could have, at a minimum, yelled at Deputy Battles to stop striking Hernandez, or to put his gun away.  At trial Officer Hodges was asked, based on his training, how an officer is supposed to intervene when they observe another officer using unreasonable force, and his answer was: "Simple.  You just stop them. . . . you can do it verbally."  Tr. at 219:15–22; *see Abdullahi*, 423 F.3d at 774 (recognizing that "a 'realistic opportunity to intervene' may exist whenever an officer could have called for a backup, called for help, or at least cautioned the excessive force defendant to stop") (simplified).  And yet Officer Hodges took no action, verbally or otherwise, to stop Deputy Battles from applying the force that he did.  On these facts, the Court cannot say that "the *only* conclusion that a reasonable jury could draw" is that Officer Hodges had no realistic opportunity to intervene in Deputy Battles's excessive force.  *Harper*, 533 F.3d at 1023.  Officer Hodges's arguments to the contrary rely on his version of the facts—namely, that he was never aware of a need to intervene and there was not enough time to intervene anyways—which the jury plainly rejected.

\* \* \*

This is not one of "those rare cases where the evidence 'permits only a conclusion contrary to [the jury's] verdict.'"  *Barnard*, 721 F.3d at 1076 (citation omitted).  As the Ninth Circuit has repeatedly recognized, "police misconduct cases almost always turn on a jury's credibility determinations."  *Santos*, 287 F.3d at 853; *see Tan Lam*, 976 F.3d at 1000 (emphasizing that "in

excessive use of force cases, the jury's role in making factual and credibility determinations is exceptionally important").  This case is no exception.  Credibility played a critical role at trial: Hernandez and Officer Hodges were the only witnesses to testify, and they each offered a competing version of the facts which, if believed, would have supported a verdict in their favor. Indeed, during closing argument, Officer Hodges's counsel asked the jury: "Who is the more credible witness in this case?  You've only heard from two witnesses. . . . Who was more credible? Who made sense? . . .  Who was confident in their testimony?  Who was composed?  Who was more consistent?  Who has more to gain from their testimony?"  Tr. at 676:15–16; 677:3.  The verdict reflects the jury's answer, and "the court must accept the jury's credibility findings consistent with the verdict."  *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (citation omitted).  Because the jury's verdict is supported by substantial evidence, it "must be upheld."  *Castro*, 833 F.3d at 1066; *see Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (en banc) ("We cannot disturb the jury's verdict if it is supported by substantial evidence.").  Officer Hodges's Rule 50(b) motion based on insufficiency of the evidence is therefore denied.

### B.    Qualified Immunity

Officer Hodges also argues that he is entitled to judgment as a matter of law because he is entitled to qualified immunity.  "Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was 'clearly established' at the time of the challenged conduct, such that 'every reasonable official' would have understood that what he is doing violates that right."  *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011)).  "[T]he two prongs of qualified immunity balance two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes."  *Id.* at 822.

Because qualified immunity is designed to provide "immunity from suit rather than a mere defense to liability," courts "resolv[e] qualified immunity as a legal issue before trial whenever possible."  *Id.* at 822–23 (emphasis and citations omitted).  Early resolution is often possible

because "qualified immunity most often turns on legal determinations, not disputed facts." *Id.* at 822 (citation omitted). However, a qualified immunity case may proceed to trial when "there are disputed factual issues that are necessary to a qualified immunity decision." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (citation omitted). In such a case, "only the jury can decide the disputed factual issues, while only the judge can decide whether the right was clearly established once the factual issues are resolved." *Morales*, 873 F.3d at 823. Thus, "whether the law governing the conduct at issue is clearly established is a question of law . . . . to be decided after trial based on the jury's resolution of the disputed facts." *Id.* at 823–24 (citations omitted); *see A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 457 (9th Cir. 2013) (holding that "the jury's view of the facts must govern [the qualified immunity] analysis once litigation has ended with a jury's verdict").

In analyzing the "clearly established" prong of qualified immunity, the "dispositive inquiry" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) (citation omitted). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'" and "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations omitted). The Supreme Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. There can also "be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *see also White*, 580 U.S. at 79 (recognizing that "general statements of the law are not inherently incapable of giving fair and clear warning" to officers) (citation omitted). "Thus, when a violation is obvious enough to override the necessity of a specific factual analogue, it is almost always wrong for an officer in those circumstances to act as he did." *Vazquez v. Cnty. of Kern*, 949 F.3d

United States District Court
Northern District of California

1153, 1164 (9th Cir. 2020) (simplified).  "Training materials and regulations are also relevant, although not dispositive, to determining whether reasonable officers would have been on notice that their conduct was unreasonable."  *Id.* at 1164–65.

In this case, the first prong of the qualified immunity analysis—whether Officer Hodges violated a constitutional right—was determined by the jury.  As detailed above, the jury found, based on substantial evidence, that Officer Hodges violated Hernandez's Fourth Amendment rights by failing to intervene in Deputy Battles's use of excessive force during Hernandez's arrest.  "Therefore, the jury's verdict against [Officer Hodges] is sufficient to deny him qualified immunity on this prong of the analysis."  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (2018) (quoting *A.D.*, 712 F.3d at 456).  Officer Hodges's entitlement to qualified immunity therefore turns on whether the law governing his conduct was "clearly established" at the time of Hernandez's arrest in May 2018.  The Court concludes that it was.

Because the jury found in favor of Hernandez on his Fourth Amendment failure-to-intervene claim, the Court is "required to construe the trial evidence in the light most favorable to [Hernandez] in determining whether [his] rights were clearly established."  *Morales*, 873 F.3d at 826 (citing *A.D.*, 712 F.3d at 453).  "Further, unlike a motion to dismiss or motion for summary judgment, [the court] must defer to the facts as they were reasonably found by the jury."  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) (citation omitted); *see A.D.*, 712 F.3d at 456 ("Deference to the jury's view of the facts persists throughout each prong of the qualified immunity inquiry.") (citation omitted).  "In the usual case, courts infer those facts from the jury's verdict and the theories presented at trial."  *Nunez v. Santos*, 427 F. Supp. 3d 1165, 1188 (N.D. Cal. 2019).

As discussed, in reaching its verdict, the jury necessarily and reasonably found that Deputy Battles used excessive force against Hernandez in violation of the Fourth Amendment, *see supra*, Part II.A.1; that Officer Hodges was aware of a need to intervene in Deputy Battles's excessive force, *see supra*, Part II.A.2; and that Officer Hodges had a realistic opportunity to intervene but failed to take any action, *see supra*, Part II.A.3.  The Court accepts those underlying findings and must "constru[e] the evidence regarding the remaining factual disputes most favorably to"

United States District Court
Northern District of California

23

Hernandez in analyzing whether Officer Hodges's failure to intervene violated clearly established law. *See Tan Lam*, 976 F.3d at 1000; *Morales*, 873 F.3d at 826 n.8 (explaining that when a general verdict is employed, courts "decide the clearly established issue on a Rule 50(b) motion by resolving all factual disputes in favor of the prevailing party"). Consequently, the Court's qualified immunity analysis must assume that: (1) Hernandez was rendered unconscious during Deputy Battles's control hold and he was still unconscious when Deputy Battles struck him six times with a metal flashlight and held a gun to his head and threatened to shoot; (2) Officer Hodges was in close proximity and observed Deputy Battles's control hold, flashlight strikes, and gun pointing, which took place over the course of approximately fifty seconds; (3) during Deputy Battles's control hold, Officer Hodges heard the deputy say "he's out" and recognized that Hernandez, who was lying motionless and face down on the ground, was unconscious; (4) at the time of Deputy Battles's flashlight strikes and gun pointing, Hernandez was still lying unconscious and prone on the pavement; (5) Officer Hodges was directly facing and within reaching distance of Deputy Battles during both the flashlight strikes and the gun pointing; (6) Officer Hodges was aware of a need to intervene in both of those excessive uses of force; and (7) Officer Hodges made no attempt to intervene, either physically or verbally, to stop Deputy Battles from using excessive force, despite having a realistic opportunity to do so. On this view of the facts, no reasonable officer could believe that either the force used or the failure to intervene was objectively reasonable.

There is no dispute that at the time of Hernandez's arrest in May 2018, it was clearly established that the Fourth Amendment prohibits police officers from using significant force on a prone suspect who is not resisting or posing any threat to the safety of officers or others. *See Young*, 655 F.3d at 1168 ("The principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well-established in 2001, years before the events at issue in this case."); *LaLonde*, 204 F.3d at 961 (holding that "in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of [force] . . . constitutes excessive force"); *Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005) (en

banc) ("The use of a force against a person who is helpless or has been subdued is constitutionally prohibited."), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc).  It was likewise clearly established by May 2018 that "pointing guns at persons who are compliant and present no danger is a constitutional violation."  *Thompson*, 885 F.3d at 587, 590. And it is beyond doubt that every reasonable officer would know that using force on a prone and unconscious suspect—who is not even capable of resisting and poses no safety threat whatsoever—clearly violates the Fourth Amendment.  *See Wimett v. Sothern*, 2014 WL 4059768, at *11 (D. Or. Aug. 14, 2014) ("Any reasonable officer would have understood that striking a prone and unconscious suspect in the head without any provocation amounts to excessive force."); *Preston v. Boyer*, 2018 WL 3118426, at *22 (W.D. Wash. May 25, 2018) ("No reasonable officer could have believed it was constitutionally permissible to kick an unconscious suspect."), *adopted*, 2018 WL 3387526 (W.D. Wash. July 12, 2018); *see also Lolli*, 351 F.3d at 417 ("[W]here there is no need for force, *any* force used is constitutionally unreasonable.") (citation omitted).  Indeed, even Officer Hodges agrees that "it's unreasonable to strike an unconscious suspect."  *See* Tr. at 200:12–14.  Thus, when all factual disputes are resolved in Hernandez's favor, Deputy Battles's excessive force in this case was obvious and was such that every reasonable officer would have known that it was clearly in violation of Hernandez's Fourth Amendment rights.[10]

       There is also no dispute that police officers have an affirmative duty to intervene in another officer's use of excessive force when they have a "realistic opportunity" to do so.  *Cunningham*, 229 F.3d at 1289–90.  This duty to intervene was clearly established in the Ninth Circuit long before Hernandez's arrest in May 2018.  *See Tobias*, 996 F.3d at 583 ("By 2013, we had clearly established that 'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'") (quoting *Cunningham*, 229 F.3d at 1289); *Perkins*, 2009 WL 688853, at *10 (holding that "the case law at the time of Defendant Moore's actions in [2005] clearly prohibited failing to intervene to prevent the use of excessive force by his co-Defendants, given the opportunity to do so"); *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp.

---

[10] Notably, Officer Hodges does not claim that Deputy Battles's conduct is protected by qualified immunity.

United States District Court
Northern District of California

United States District Court
Northern District of California

3d 990, 1002 (C.D. Cal. 2014) (recognizing that "it is established law that officers have a duty to intercede when a fellow officer violates the constitutional rights of a citizen" and denying qualified immunity on post-verdict Rule 50(b) motion where "Plaintiffs provided evidence showing that Defendants Cruz and Blasnek saw or heard Plaintiffs being beaten and were in a position to intercede and prevent excessive force as it occurred"), *aff'd*, 891 F.3d 776 (9th Cir. 2018). A majority of other circuits had likewise recognized by May 2018 that police officers have a clearly established duty to intervene in the use of excessive force when they have the ability to do so. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) ("That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994."); *Ortiz v. Kazimer*, 811 F.3d 848, 853 (6th Cir. 2016) ("Our caselaw clearly establishes that police officers are liable for failing to stop ongoing excessive force when they observe it and can reasonably prevent it."); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) ("It is 'clearly established' that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."); *Krout v. Goemmer*, 583 F.3d 557, 565–66 (8th Cir. 2009) (recognizing that "[a]s of July 2006, it was clearly established that a state actor may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of excessive force by another official," and citing cases from the First, Second, Sixth, Seventh, Tenth, and Eleventh Circuits recognizing the same).

In addition to the clearly established case law, RPD policy at the time of Hernandez's arrest required that "[a]ny officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force," Ex. 19 at 1, and Officer Hodges understood that failing to intervene in violation of this policy could result in a variety of adverse consequences, including disciplinary action and civil liability for violating the Fourth Amendment. *See* Tr. at 282:15–283:19, 299:2–24. Officer Hodges was also trained on how to intervene in excessive force situations, including by issuing a simple verbal command to stop, and he testified

United States District Court
Northern District of California

1    that if he "had observed an officer act unreasonably, [he] 100 percent would have intervened and

2    interceded, but [he] did not see that in this case." *See id.* at 219:15–22, 260:20–22.

3            Given the clearly established duty to intervene in excessive force situations, as well as

4    Officer Hodges's training on his mandatory duty to intervene, the Court finds that any reasonable

5    officer in Officer Hodges's position—who, under the jury's view of the facts, was aware that

6    excessive force was being applied and had a realistic opportunity to try to stop it—would have

7    known he was required to intervene. *See Perkins*, 2009 WL 688853, at *10 ("A reasonable officer

8    could not have believed that failing to intervene to prevent the amount of force used—punching

9    and beating a suspect while handcuffing him—was lawful in light of clearly established law and

10   the information that Defendant Moore possessed at the time of the incident."); *Knapps v. City of*

11   *Oakland*, 647 F. Supp. 2d 1129, 1163 (N.D. Cal. 2009) ("A reasonable officer could not have

12   reasonably but mistakenly believed that he had no duty to intervene to stop another officer in their

13   immediate presence from inflicting excessive force on a subject when they could have prevented

14   it.").

15           Officer Hodges attempts to counter this conclusion by again relying on his version of the

16   facts and by arguing that Ninth Circuit precedent does not clearly establish when an officer must

17   intervene in excessive force cases.  Specifically, he argues that there "is simply no robust

18   consensus of case law that put [him] on notice that that he had a duty to intervene in a fast

19   developing situation where: (1) the officer is aware of some force by another officer (Dep.

20   Battles), but not the full extent of the force, and (2) the force happened quickly and without

21   warning, while (3) the officer is trying to assist in handcuffing a resistive, unhandcuffed suspect

22   during a high risk car stop."  Dkt. 200 at 18; *see also* Dkt. 222 at 2 ("We do not dispute that Ofc.

23   Hodges had a general duty to intervene per his policy, but here, he was not aware of a need to

24   intervene, nor was there adequate time or opportunity that intervention was possible.").  But for

25   the reasons already discussed, "this framing 'focuses on a factual account that is not supported by

26   the jury's verdict.'" *Marroquin v. Unidentified LAPD Officer*, 2022 WL 18278405, at *5 (C.D.

27   Cal. Dec. 15, 2022) (denying qualified immunity on post-verdict motion for judgment as a matter

28   of law) (quoting *Willis v. City of Fresno*, 2014 WL 466819, at *6 (E.D. Cal. Jan. 31, 2014), *aff'd*,

680 F. App'x 589 (9th Cir. 2017)); *see also Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1148 (9th Cir. 1996) (reversing post-verdict grant of qualified immunity to defendant-officer; noting that "[t]he problem with [defendant's qualified immunity] argument is that it depends upon the officers' version of the facts—a version the jury plainly rejected"), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001).

Officer Hodges also relies on the Ninth Circuit's unpublished opinion in *Penaloza v. City of Rialto*, an excessive force case involving the use of a police canine, to argue that "when" an officer must intervene is not clearly established.  836 F. App'x 547, 549–550 (9th Cir. 2020) (reversing denial of summary judgment to non-intervening officer on qualified immunity grounds; summarily holding that "[b]ecause the law does not clearly establish when an officer must intervene, Lopez is entitled to summary judgment on qualified immunity grounds for his failure to intervene when Boda [another officer's police dog] was biting Goode").  Another court in this Circuit recently considered and rejected an identical argument raised at the summary judgment stage, explaining:

> For decades the Ninth Circuit has held, in published and unpublished decisions, that it is clearly established law that an officer may be liable for failing to intervene when fellow officers violate the constitutional rights of citizens.  As explained by the Ninth Circuit in a published decision issued subsequent to *Penaloza*, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Tobias*, 996 F.3d at 584 (quoting *Cunningham*, 229 F.3d at 1289).  That is "when" clearly established law tells officers they must intercede—at the first realistic opportunity.  The Ninth Circuit in *Tobias* explained that if the officers accused of failing to intervene "were aware of the violation as it happened, they may have had a duty to intercede to stop the constitutional violation and would not be entitled to qualified immunity." *Id.* at 583.  Because the facts were not sufficiently developed to determine whether the officers "watched [the direct violating officer] Arteaga's questioning and were aware of his violation of Tobias's Fifth Amendment rights as it occurred," the Ninth Circuit remanded to the district court to "consider in the first instance whether there are material facts in dispute as to Cortina and Pere's liability for Arteaga's actions." *Id.* at 584.

> The Ninth Circuit's recent decision in *Tobias* comports with decades of decisions that look to the facts of the alleged failure to intervene to see whether the plaintiff sufficiently alleged (at the motion to dismiss stage) or demonstrated that there are disputed facts (at the summary judgment stage) that the officers had a realistic opportunity to intervene. . . .

United States District Court
Northern District of California

*Segura v. Miller*, 2022 WL 1165728, at *1–2 (D. Or. Apr. 20, 2022) (denying summary judgment on qualified immunity grounds to non-intervening officers because "the underlying facts are disputed as to whether [those defendants] had the opportunity to intercede" in the alleged excessive force).  This reasoning, which the Court finds persuasive, applies with even more clarity here, where a jury has already found that Officer Hodges both was aware of Deputy Battles's excessive force as it happened and had a realistic opportunity to intervene.  *See A.D.*, 712 F.3d at 459 (explaining that "post-verdict, a court must apply the qualified immunity framework to the facts that the jury found").

Officer Hodges further argues that "many cases have come down that would put [him] on notice that his conduct did not violate clearly established law."  Dkt. 222 at 4 (emphasis omitted). But the cases he cites were all decided at summary judgment and are readily distinguishable from the factual circumstances that the Court must assume for purposes of the post-verdict qualified immunity analysis in this case.  *See, e.g.*, *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (granting summary judgment on Eighth Amendment failure-to-intervene claims where the alleged excessive force, consisting of post-handcuffed beating and dog-biting, "took place during the rapidly unfolding chaos of the physical struggle to apprehend Hughes" and the non-intervening officers were "not canine handlers, [and] cannot be held liable for fleeting acts which they did not commit, came without warning, and could not have prevented"); *Thomas v. Darling*, 2019 WL 652994, at *9 (E.D. Cal. Feb. 15, 2019) (granting summary judgment on Eighth Amendment failure-to-protect claim; finding that non-force-using officers did not have a realistic opportunity to intervene to protect prisoner from excessive force where "there was a 21 second period of time between when plaintiff stood up and when he was pepper sprayed by defendant Darling" and "during this same time period, other inmates on the yard also stood up and started running towards defendants" and the "actions by the other inmates on the exercise yard prevented defendants from having a realistic opportunity to prevent Darling's use of pepper spray on plaintiff"), *adopted*, 2019 WL 1380287 (E.D. Cal. Mar. 27, 2019); *Fernandez v. Virgillo*, 651 F. App'x 692, 693–94 (9th Cir. 2016) (affirming summary judgment in favor of non-shooting officer who initially "did intervene by talking calmly to Daniel and persuading him to leave the trailer" and finding that "the

United States District Court
Northern District of California

1    period of seconds between when [shooting officer] re-escalated the situation and when he shot

2    Daniel . . . did not offer a realistic opportunity for Virgillo to intercede in a meaningful way");

3    *Burns v. City of Concord*, 2017 WL 5751407, at *11–12 (N.D. Cal. Nov. 28, 2017) (granting

4    qualified immunity on summary judgment to non-shooting officers who were "pursuing a suspect

5    whom they believed might be armed in a rapidly evolving situation" and plaintiff "offered no

6    evidence that any of the non-shooting officers had a realistic opportunity to intercede in the

7    shooting," but denying summary judgment to same officers on plaintiff's claim that they failed to

8    intervene in post-shooting police dog attack that lasted "ten to fifteen seconds" because there were

9    "questions of material fact as to whether [those officers] had an opportunity to intercede in the dog

10   attack and failed to do so").

11        Finally, Officer Hodges argues that "[g]eneral statements of law are not capable of

12   providing a fair and clear warning to officers," Dkt. 206 at 12, but controlling precedent says

13   otherwise.  *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (reiterating that "general statements of

14   the law are not inherently incapable of giving fair and clear warning, and in other instances a

15   general constitutional rule already identified in the decisional law may apply with obvious clarity

16   to the specific conduct in question, even though the very action in question has not previously

17   been held unlawful") (simplified); *see also A.D.*, 712 F.3d at 455 ("This is one of those rare cases

18   in which the constitutional right at issue is defined by a standard that is so 'obvious' that we must

19   conclude—based on the jury's finding—that qualified immunity is inapplicable, even without a

20   case directly on point."); *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022)

21   (holding that "no 'body of relevant case law' is necessary in an 'obvious case' like this one"), *cert.*

22   *denied sub nom. Cnty. of Riverside v. Est. of Clemente Najera-Aguirre*, 143 S. Ct. 426 (2022).

23   When all factual disputes are resolved in Hernandez's favor, as they must be in deciding the

24   clearly established issue on a Rule 50(b) motion, *see Morales*, 873 F.3d at 826 n.8, the Court finds

25   that the clearly established duty of police officers to intervene in the use of excessive force when

26   they have a realistic opportunity to do so applied "with obvious clarity" here.  *Hope*, 536 U.S. at

27   741.  Officer Hodges took no action to intervene in the use of obvious excessive force against a

28   prone and unresponsive suspect, when he had a realistic opportunity and clearly established duty

1    to do so.  He is not entitled to qualified immunity.  Officer Hodges's Rule 50(b) motion based on

2    qualified immunity is denied.

3    **III.    MOTION FOR NEW TRIAL**

4         Officer Hodges alternatively moves for a new trial under Rule 59.  A court may grant a

5    new trial "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has

6    heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).

7    "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against

8    the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was

9    not fair to the party moving.'"  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)

10   (citation omitted).  "The authority to grant a new trial . . . is confided almost entirely to the

11   exercise of discretion on the part of the trial court."  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S.

12   33, 36, (1980).  However, "a district court may not grant a new trial simply because it would have

13   arrived at a different verdict."  *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d

14   814, 819 (9th Cir. 2001).  Rather, the court must have a "definite and firm conviction that a

15   mistake has been committed" after "having given full respect to the jury's findings."  *Landes*

16   *Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (citation omitted).

17        Officer Hodges argues that he is entitled to a new trial because: (1) the verdict is against

18   the great weight of the evidence; (2) Hernandez's counsel engaged in misconduct throughout the

19   trial; (3) cumulative prejudicial errors denied him a fair trial; and (4) the compensatory damages

20   award is excessive and there is no evidence to support the punitive damages award.  With respect

21   to the fourth ground, Officer Hodges argues that the Court should "apply remittitur to the jury's

22   compensatory damages award, and eliminate the jury's punitive damages award," or, alternatively,

23   order a new trial on damages.  Dkt. 200 at 27.  None of these arguments is persuasive.

24        **A.    Weight of the Evidence**

25        Officer Hodges contends that a new trial is warranted because the jury's verdict is against

26   the great weight of the evidence.  "Although the court's ruling on an alternative motion for a new

27   trial involves the exercise of some discretion, 'a stringent standard applies when the motion is

28   based on insufficiency of the evidence.'"  *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir.

United States District Court
Northern District of California

1997) (citation omitted).  "A motion will be granted on this ground only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result."  *Id.* (internal quotations and citation omitted).  Officer Hodges has not met that stringent standard here.

In arguing that the verdict is "against the great weight of the evidence," Officer Hodges relies on the same arguments he made in support of his Rule 50(b) motion challenging the sufficiency of the evidence.  *See* Dkt. 200 at 19–20 ("As explained supra, there is extremely limited evidence which supports findings the [sic] Deputy Battles used excessive force, or that Ofc. Hodges failed to intervene in any such claimed excessive force.  Defendant incorporates those arguments in support of this alternative motion for a new trial.  Plaintiff failed to meet his burden in proving the unlawfulness of Deputy Battles's uses of force.  There was no evidence that Ofc. Hodges knew he needed to intervene, or had a reasonable opportunity to do so.").  The Court has already considered and rejected those arguments in connection with Officer Hodges's Rule 50(b) motion.  As discussed at length above, the jury's findings underlying the verdict are supported by substantial evidence.  For the same reasons, the Court finds that the verdict is not against the great weight of the evidence.  *See Hung Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017) (explaining that "where the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence, the district court's denial of a Rule 59 motion is virtually unassailable" and is subject to reversal "only when there is an absolute absence of evidence to support the jury's verdict") (emphasis and citation omitted).

That the Rule 59 standard allows the trial court to weigh the evidence and assess credibility does not change the Court's conclusion.  *See Landes*, 833 F.2d at 1371 (noting that a trial judge "can weigh the evidence and assess the credibility of witnesses" when deciding a Rule 59(a) motion, but recognizing that "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter") (citation omitted); *see also Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1084 (9th Cir. 2009) ("The district court cannot substitute its 'evaluations for those of the jurors.'") (citation omitted).  Because Officer

1   Hodges raises no new arguments, his motion for a new trial on the ground that the verdict is

2   against the weight of the evidence is denied.  *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d

3   951, 966 (9th Cir. 2009) (summarily affirming district court's denial of Go Daddy's Rule 59(a)

4   motion for a new trial where "Go Daddy essentially repeats the same arguments that we have

5   examined and rejected above" as to Go Daddy's Rule 50(b) sufficiency of the evidence motion).

6   **B.     Attorney Misconduct**

7        Officer Hodges next argues that he is entitled to a new trial because Hernandez's counsel

8   engaged in "numerous highly prejudicial and improper acts" throughout the trial.  Dkt. 206 at 15.

9   To receive a new trial on grounds of attorney misconduct, Officer Hodges "must meet a high

10  standard: the moving party must demonstrate adverse counsel's misconduct substantially

11  interfered with the moving party's interest."  *S.E.C. v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012)

12  (simplified).  Further, "to warrant reversal on grounds of attorney misconduct, the flavor of

13  misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury

14  was influenced by passion and prejudice in reaching its verdict."  *Id.* (quoting *Kehr v. Smith*

15  *Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984)).  To permeate a proceeding,

16  the misconduct need not occur throughout the whole trial, but the jury must have been "necessarily

17  prejudiced."  *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1145 & n.16 (9th Cir. 2001); *see*

18  *Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1990) ("A new trial is warranted only if counsel's

19  misconduct affected the verdict.").  The trial court is "in a superior position to gauge the

20  prejudicial impact of counsel's conduct during the trial."  *Hemmings v. Tidyman's Inc.*, 285 F.3d

21  1174, 1192 (9th Cir. 2002) (citation omitted).

22       The alleged misconduct by Hernandez's counsel consists of: (1) "repeated insinuations that

23  Ofc. Hodges and the Richmond Police Department habitually injure people and violate their

24  constitutional rights," (2) a "highly prejudicial" question to Officer Hodges about the source of

25  payment of any damages, and (3) "inflammatory" statements and arguments regarding

26  Hernandez's immigration status and the use of "deadly force via flashlight strikes to the head."

27  None of these instances of alleged misconduct, whether considered individually or cumulatively,

28  warrants a new trial.

United States District Court
Northern District of California

1

### 1.    Insinuations of Prior Bad Acts

2      Officer Hodges contends that on "at least five occasions" Hernandez's counsel "blatantly

3   asked loaded questions, or implied tacitly, that Ofc. Hodges and/or the Richmond Police

4   Department had a history of improperly hurting people," in violation of the Court's in limine

5   orders.  Dkt. 200 at 20.  Specifically, on the first day of trial, Hernandez's counsel asked Officer

6   Hodges (1) "In 2022, were you sued twice for violations of civil rights?" and (2) "Have you ever

7   been disciplined by the Richmond Police Department?"; on the second day of trial, Hernandez's

8   counsel asked Officer Hodges (3) "Is it your understanding that between 2018 and 2019, Gunnar

9   injured 17 persons in Richmond?"; on the third day of trial, Hernandez's counsel asked (4) "Are

10  you aware of any excessive force complaints against Richmond Police Department officers?"; and

11  during closing his argument, Hernandez's counsel commented (5) "one of my current clients is a

12  Richmond PD officer. . . . In fact, he's also Mr. Blechman's client."  *Id.* at 20–21.  According to

13  Officer Hodges, the cumulative effect of these "improper questions and comments highly

14  prejudiced [him], and entitles him to a new trial."  *Id.* at 21.  The Court disagrees.

15      As to the first four questions, the Court sustained Officer Hodges's counsel's objections to

16  each of those questions before Officer Hodges could answer them.[11]  *See United States v.*

17  *Sarkisian*, 197 F.3d 966, 989 (9th Cir. 1999) (holding that defendants suffered no prejudice where

18  court sustained objections before witness could respond to alleged improper questions).  The

19  Court also instructed the jury that questions by counsel are not evidence, and that "whenever I

20  sustain an objection to a question, you must ignore the question and must not guess what the

21  answer might have been."  *See* Tr. at 91–93.  Officer Hodges "offers no tenable reason why the

22  strong presumption that juries follow the court's instructions should not apply in the present case."

23  *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014).

24      The Court likewise finds no prejudice with respect to Hernandez's counsel's comment

25  during closing argument that he represents a Richmond police officer who is "also Mr.

26  _____

27  [11] The Court notes that during his opening statement, Officer Hodges's counsel made references to
   Officer Hodges's "stellar career" and professional accolades, including that "[h]e's also won
28  Officer of the Year for the Richmond Police Department several times, as voted for by his sworn
   fellow officers."  *See* Tr. at 132:10–17.

United States District Court
Northern District of California

United States District Court
Northern District of California

Blechman's client."  Officer Hodges did not object to this comment when it was made (he claims that a "significant objection at that point would have drawn significant attention from the jury," Dkt. 206 at 15), nor did he request any other relief from the Court, such as a curative instruction, at any point before the jury was instructed.  Because Officer Hodges failed to contemporaneously object to this comment, he faces the even "higher threshold" of plain error review.  *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 517 (9th Cir. 2004).  "Plain error review requires: (1) an error; (2) that the error be plain or obvious; (3) that the error have been prejudicial or affect substantial rights; and (4) that review be necessary to prevent a miscarriage of justice."  *Id.* (citing *Hemmings*, 285 F.3d at 1193 (noting that reversal due to plain error "is available only in 'extraordinary cases'")).  Officer Hodges has made no such showing.  If anything, "[t]he fact that [his] counsel did not object before the jury was instructed strongly suggests that counsel made a strategic decision to gamble on the verdict and suspected that the comment[] would not sway the jury." *Hemmings*, 285 F.3d at 1195.  Moreover, the jury was instructed that arguments and statements by counsel are not evidence, *see* Tr. at 91, and the Court presumes the jury followed that instruction. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions").

### 2.    Question Regarding Source of Payment of Damages

Officer Hodges's next claim of prejudicial misconduct concerns a question that Hernandez's counsel asked him on the second day of trial about payment of any damages: "Officer, if you were to be found liable by the jury, would you personally foot the bill for that?" Tr. at 262:23–24.  Before Officer Hodges could answer, his counsel objected and the Court sustained the objection, struck the question from the record, and explicitly instructed the jury to "not pay any attention to the question."  *Id.* at 263:21–23.  Hernandez's counsel did not raise the topic again.  "A judge's prompt corrective action in response to improper comments usually is sufficient to cure any problems arising from such improper comments."  *United States v. Washington*, 462 F.3d 1124, 1136 (9th Cir. 2006); *see also Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) ("Ordinarily, a cautionary instruction is presumed to have cured prejudicial impact.").  Officer Hodges nevertheless attempts to show prejudice by virtue of the jury's question

35

during deliberations, asking "Will the defendant have to pay punitive damages or any damages out of his own pocket." Dkt. 179. Officer Hodges argues that the jury's question was prompted by Hernandez's counsel's improper question about payment of damages and "demonstrates that the jury improperly considered that the City of Richmond, or some other deep-pocketed third party, would cover the cost of any jury award, thus improperly decreasing the stakes for Officer Hodges." Dkt. 200 at 22. Officer Hodges further speculates that the jury "may have awarded more money simply because they believed the payment was coming from deep pockets," and he argues that this "clear impropriety" entitles him to a new trial. *Id.* The Court rejects these contentions.

There is no evidence that the jury's verdict was caused or otherwise influenced by Hernandez's counsel's unanswered and stricken question asking Officer Hodges if he would personally pay any damages awarded against him. To be sure, it "has long been the rule in [the Ninth Circuit] that evidence of . . . indemnification is not admissible on the issue of damages, and, should any such information reach the ears of the jurors, the court should issue a curative instruction." *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994); *see id.* at 1519–21 (holding that the district court committed prejudicial error requiring a new trial on damages by (i) instructing the jury that the City of Los Angeles would indemnify the LAPD officer defendant for any compensatory damages awarded, and by (ii) allowing plaintiff's counsel to inform the jury during closing argument that the City was authorized to indemnify the defendant for any punitive damages assessed against him). But the non-leading and unanswered question here is far from the explicit statements of indemnification held improper in *Holcomb*, and, unlike the district court in *Holcomb*, this Court took immediate corrective action to cure any potential prejudice to Officer Hodges by striking the question from the record and specifically instructing the jury to disregard it. *See id.* at 1518–19; *see also Holmes v. Harris*, 845 F. App'x 604, 605 (9th Cir. 2021) (holding that plaintiff's counsel's unanswered questions to defendant about indemnification did "not constitute prejudicial misconduct justifying a new trial" where district court sustained defense counsel's objections to those questions before defendant could answer, and there was no other evidence or information regarding indemnification presented to the jury).

Officer Hodges argues that notwithstanding the Court's prompt corrective action, "the jury's question demonstrates the jury improperly considered the information about who would pay any judgment." Dkt. 200 at 22. But there was no "information about who would pay" for the jury to consider. Moreover, after receiving the jury's question and conferring with counsel, the Court provided the jury with the following written response, which both parties agreed to: "The jury has been instructed on damages and should refer to those instructions. No further response is appropriate to this question." *See* Tr. at 713:1–714:17; Dkt. 179. The jury instruction on compensatory damages explained that "[d]amages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant, Officer Hodges. . . . It is for you to determine what damages, if any, have been proved. The arguments of the attorneys are not evidence of damages. Your award must be based upon evidence and not upon speculation, guesswork or conjecture." Dkt. 176 at 12, Instruction No. 10. And the jury instruction on punitive damages made clear that "[t]he purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff. . . . If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party." *Id.* at 14, Instruction No. 12. The jury was given a copy of the final jury instructions to consult during deliberations, and the Court finds no basis to conclude that the jury failed to follow those instructions in reaching its verdict and award. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1023 (9th Cir. 2000) ("[T]he law presumes that jurors carefully follow the instructions given to them, and there is nothing to suggest that they failed to do so here.") (internal citation omitted). Officer Hodges's arguments to the contrary are purely speculative and "a verdict will not be upset

\\

\\

on the basis of speculation."[12]  *Lau v. Mercedes-Benz USA LLC*, 2014 WL 1677552, at *3 (N.D. Cal. Apr. 28, 2014) (citation omitted).

### 3.   "Inflammatory" Arguments

Officer Hodges contends that there were "two additional lines of evidence and arguments" that were "highly inflammatory and led to significant cumulative prejudice." Dkt. 200 at 22–23. First, he claims that Hernandez "used his immigration status to illicit sympathy and play on historical prejudices (namely, that the police abuse immigrants, which was not an appropriate argument in this case)." *Id.* Second, he claims that Hernandez's counsel made "repeated references to 'deadly force' via flashlight strikes to the head" which "garnered inappropriate and unfair sympathy for [Hernandez], inflaming the jury against Ofc. Hodges for failing to intervene in the alleged (not based on any evidence) head impacts." *Id.* at 24.  According to Officer Hodges, the "narrative spun by this commentary is that a bad, white, police officer stood by idly while an innocent young immigrant was nearly beaten to death via the use of deadly force." Dkt. 206 at 17. These contentions are without merit.

With respect to Hernandez's immigration status and participation in the DACA program, that information was properly received as background, just like the information about Officer Hodges's prior military service and numerous deployments abroad with the Marine Corps.  *See Est. of Najera v. City of Anaheim*, 2018 WL 6039870, at *4 (C.D. Cal. July 23, 2018) (noting that "background information that will help the jury understand who the parties in the case are is relevant and admissible") (simplified).  To the extent Officer Hodges believed that Hernandez's testimony concerning his immigration status was somehow unfairly prejudicial or amounted to "improper character testimony," as he now claims, he should have objected on those grounds at trial.  He did not.  *See United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) ("Failure to

---

[12] For the first time in his reply brief, Officer Hodges asserts that "[s]everal jurors also indicated in informal conversations with defense counsel after trial that the jurors believed Officer Hodges would not pay the damages out of pocket and that this influenced the amount of the verdict." Dkt. 206 at 16 n.4.  The Court declines to consider this assertion as "[i]ssues raised for the first time in the reply brief are waived." *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996).  And even if the issue was not waived, "Federal Rule of Evidence 606(b) bars this Court from considering a juror's post-verdict statements that undermine the verdict except in limited situations that do not apply here."  *Vazquez v. City of Long Beach*, 2017 WL 5973290, at *3 (C.D. Cal. Jan. 24, 2017).

make a timely objection constitutes a waiver of that objection.").  And, contrary to Officer

Hodges's contentions, there was no "persecuted immigrant narrative" advanced at trial, and

Hernandez's counsel did not "compar[e] [Hernandez] to a holocaust survivor" during his closing

argument.  *See* Dkt. 200 at 23.  The statements that Hernandez's counsel did make in his closing—

including reciting a quote from Nobel Peace Prize winner and holocaust survivor Elie Wiesel, and

remarking that "one of the very reasons why people come to this country" is because of the

protections under the Fourth Amendment and the opportunity to seek recourse when constitutional

rights are violated, *see* Tr. at 654:17–25, 659:22–660:6—come "nowhere near stepping over the

line."  *Settlegoode*, 371 F.3d at 518.  Moreover, the jury received the following instruction at the

end of closing arguments, which reiterated a similar instruction given at the beginning of the case:

> It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not.  *You must decide the case solely on the evidence and the law.  Do not allow personal likes or dislikes, sympathy, prejudice, bias, or public opinion to influence you.  You should also not be influenced by any person's race, color, religion, national ancestry,* sexual orientation, gender identity, profession, occupation, economic circumstances, or position in life or in the community.  You will recall that you took an oath promising to do so at the beginning of the case.

Dkt. 176 at 16, Instruction No. 14 (emphasis added).  Officer Hodges again offers no persuasive

reason why the "strong presumption" that juries follow their instructions should not apply in this

case.  *Escriba*, 743 F.3d at 1247.

Officer Hodges's other claim of cumulative prejudice, stemming from Hernandez's

counsel's references to "deadly force" and "arguments that [Hernandez] was struck in the head

with the flashlight," fares no better.  The Court does not agree that these references and arguments

were "without any evidentiary basis or support" and thus improper, as Officer Hodges claims.

Dkt. 200 at 15.  At trial, Officer Hodges agreed that "a strike with a baton or improvised device to

the face, head, or neck could constitute deadly force," Tr. at 402:20–23, though he adamantly

disagreed that the bodycam videos showed any flashlight strikes to Hernandez's head, *see id.* at

400:12–17 (testifying that Deputy Battles's flashlight strikes "were not to the head.  And it's even

on the video.  It's to [Hernandez's] upper left shoulder.").  But the bodycam footage does not

United States District Court
Northern District of California

clearly depict whether Deputy Battles's flashlight strikes landed on Hernandez's upper shoulder (as Officer Hodges and his counsel claimed at trial) or his head/neck (as Hernandez's counsel argued).   Indeed, during his opening statement, Officer Hodges's counsel told the jury: "So you will see this and you will hear testimony, and Mr. Cajina brought it up a little bit.  At some point Deputy Battles is one of the deputies who's using force.  He does use his flashlight as a striking device, which is an appropriate use of a flashlight for officers.  He strikes Mr. Hernandez several times.  *I don't believe it's in the head, but you will have to make that decision.*"  *Id.* at 127:11–17 (emphasis added).  In addition to viewing the bodycam footage, the jury saw photographs of Hernandez's injuries taken at the hospital shortly after his arrest, which showed significant bruising on his face and forehead.  The fact that Hernandez did not sustain any skull fractures or head injuries severe enough to be detected on his CT scan at the hospital does not, as Officer Hodges urges, foreclose Hernandez's counsel from arguing that head strikes occurred.

During closing argument, Hernandez's counsel was "permitted to make inferences and advance 'plausible argument[s] in light of the record.'"  *Draper v. Rosario*, 836 F.3d 1072, 1083–84 (9th Cir. 2016) (quoting *Settlegoode*, 371 F.3d at 518).  He did just that:

> [W]e are *alleging* that Deputy Battles struck Mr. Hernandez repeatedly on the head with a flashlight. . . . So what evidence has plaintiff presented to you in support of that? . . . We've seen the photographs of Mr. Hernandez's face.  We've seen the videos of Deputy Battles striking him.  From that, we believe that you can draw the conclusion that Deputy Battles used his metal flashlight to strike Mr. Hernandez in the head.  The defense has put forth other evidence.  They've put forth their own witness, Officer Hodges, to testify that, in fact, when reviewing the video, he noticed that those strikes were not to the head, that they were to the upper back.  That's their evidence.  *It's for you to weigh it.*

Tr. at 658:4–21 (emphasis added).  And Officer Hodges's counsel had the opportunity to respond during his closing argument:

> Mr. Hernandez was never hit with a flashlight in the head.  We all know that.  The only people that don't know that are on the plaintiff side.  How do we know that?  We'll talk about that in a little bit.  But Mr. Hernandez would have suffered significant head injuries if he was struck that hard that we see on the video in his head six times by a flashlight.  Okay?  We know that didn't happen. . . . You can see for yourself on the video, the strikes are not to Mr. Hernandez's head.  It's clearly to his shoulder.

1   *Id.* at 684:16–22, 691:5–7. As noted, the jury was instructed that arguments and statements by

2   lawyers are not evidence and it is presumed the jury followed that instruction. In short, Officer

3   Hodges has not shown that Hernandez's counsel's arguments regarding head strikes and

4   references to deadly force were improper, much less that the jury was "influenced by passion and

5   prejudice in reaching its verdict." *Jasper*, 678 F.3d at 1129.

6       **C.**    **Cumulative Error**

7       Next, citing cases involving erroneous evidentiary rulings and other *judicial* errors, Officer

8   Hodges argues that he is entitled to a new trial because "cumulative prejudicial errors throughout

9   the trial denied [him] a fair trial." *See* Dkt. 200 at 19 (citing *Gonzales v. Police Dep't, City of San

10  Jose*, 901 F.2d 758 (9th Cir. 1990) (concluding that the cumulative effect of two "material legal

11  errors" by district court following bench trial was "sufficiently serious to warrant a remand");

12  *Jerden v. Amstutz*, 430 F.3d 1231, 1241 (9th Cir. 2005) (concluding that evidentiary errors by

13  district court, considered cumulatively, "affected a substantial right of the parties and constituted

14  reversible error warranting a new trial")). Officer Hodges specifically relies on the harmless error

15  standard set forth in *Obrey v. Johnson*, which the Ninth Circuit applies "when reviewing the effect

16  of erroneous evidentiary rulings" to determine whether such judicial errors warrant reversal. 400

17  F.3d 691, 701 (9th Cir. 2005). As explained in *Obrey*, once an evidentiary error is established, the

18  reviewing court must presume prejudice unless it concludes that "it is more probable than not that

19  the error did not materially affect the verdict." *Id*. But Officer Hodges has not challenged any

20  evidentiary rulings or otherwise argued that the Court committed any error such that *Obrey's*

21  framework even applies. Rather, Officer Hodges's assertions of "cumulative error" appear to

22  relate to the instances of alleged misconduct by Hernandez's counsel. As discussed above, Officer

23  Hodges has not shown that the claimed misconduct "so permeated the trial that the jury was

24  necessarily prejudiced." *Kehr*, 736 F.2d at 1286. And even if *Obrey* did apply, the Court finds

25  that the jury more probably than not would have reached the same verdict without Hernandez's

26  counsel's alleged misconduct.

27      **D.**    **Damages Award**

28      Finally, Officer Hodges challenges both components of the jury's damages award.

United States District Court
Northern District of California

41

United States District Court
Northern District of California

1    Specifically, he argues that the compensatory damages award ($250,000) is "highly excessive"

2    based on the evidence at trial, and that the punitive damages award ($300,000) is "completely

3    unsupported by the evidence" at trial.  Dkt. 200 at 26–27.  He asks that the Court "decrease the

4    jury's compensatory award, and eliminate the jury's punitive award, or in the alternative, order a

5    new trial." *Id.* at 27.  The Court declines to do so.

6         Courts afford "substantial deference to a jury's finding of the appropriate amount of

7    damages" and "must uphold the jury's finding unless the amount is grossly excessive or

8    monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."

9    *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

10   Damages awards must be upheld "whenever possible, and all presumptions are in favor of the

11   judgment." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1224 (9th Cir. 2010) (citation omitted).  If

12   a court, "after viewing the evidence concerning damages in a light most favorable to the prevailing

13   party, determines that the damages award is excessive," it may either "grant defendant's motion

14   for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur"—

15   that is, a reduction in the amount of damages.  *Fenner v. Dependable Trucking Co.*, 716 F.2d 598,

16   603 (9th Cir. 1983).

17              **1.    Compensatory Damages**

18        "A plaintiff who establishes liability for deprivations of constitutional rights actionable

19   under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a

20   consequence of those deprivations." *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988).

21   Such damages include "compensation for economic harm, pain and suffering, and mental and

22   emotional distress that results from the violations." *Id.*; *see Chalmers v. City of Los Angeles*, 762

23   F.2d 753, 760 (9th Cir. 1985) ("The purpose of awarding damages in a section 1983 action is to

24   compensate the aggrieved party.").  Significantly, the Ninth Circuit "does not require that damage

25   awards must be supported by 'objective' evidence." *Harper*, 533 F.3d at 1030 (rejecting

26   defendant's argument that $5,000,001 verdict was excessive because none of the plaintiffs

27   "presented any evidence of specific monetary damages, such as medical expenses or lost

28   income").  "Compensatory damages may be awarded for humiliation and emotional distress

42

1    established by testimony or inferred from the circumstances, whether or not plaintiffs submit

2    evidence of economic loss or mental or physical symptoms." *Tortu*, 556 F.3d at 1086 (quoting

3    *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994)).

4         The jury here was properly instructed on compensatory damages (as Officer Hodges does

5    not dispute) and awarded Hernandez $250,000.  Officer Hodges argues that this award is excessive

6    and should be reduced to some unspecified amount because Hernandez suffered only "minor"

7    physical injuries, there was no evidence of medical bills or other economic loss, and Hernandez's

8    testimony about his emotional distress was otherwise insufficient to sustain the amount awarded.

9    *See* Dkt. 200 at 25–26.  These arguments are not persuasive.

10        Hernandez testified at trial that upon regaining consciousness during his arrest, he

11   experienced significant physical pain ("like a 9, 10-ish" on a pain scale of 1 to 10) as supported by

12   the photographs of his injuries and his trip to the hospital following the incident, and he continued

13   to experience pain following his discharge from the hospital.  Tr. at 490:22–24, 494:14–15.

14   Hernandez also testified about the emotional harm he suffered as a result of the incident, including

15   that he cannot go outside without feeling fearful for his life.  *Id.* at 498:7–13, 499:16–17.  And he

16   further testified that he saw a counselor approximately fifteen to twenty times to talk about issues

17   relating to the incident.  *Id.* at 584:23–586:17.  "The testimony of the plaintiff alone can

18   substantiate a jury's award of emotional distress damages."  *Harper*, 533 F.3d at 1029; *see Zhang*

19   *v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040–41 (9th Cir. 2003) (concluding that "Zhang's

20   testimony alone is enough to substantiate the jury's award"); *Chalmers*, 762 F.2d at 761

21   (upholding damages based solely on plaintiff's testimony).  The Court finds that Hernandez's

22   testimony, which the jury obviously believed, is sufficient to support the jury's compensatory

23   damages award.

24        Because Officer Hodges has not shown that the amount of the award is grossly excessive,

25   clearly not supported by the evidence, or speculative, the Court "must uphold the jury's finding."

26   *Del Monte*, 95 F.3d at 1435.  Officer Hodges's motion for a new trial or remittitur as to

27   compensatory damages is denied.

28

United States District Court
Northern District of California

## 2.   Punitive Damages

A jury may award punitive damages under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *see also* Ninth Circuit Model Civil Jury Instruction 5.5 (2017).  Unlike compensatory damages, which serve to compensate the plaintiff, punitive damages "serve to punish the defendant for wrongful conduct and to deter the defendant and others from repeating that wrong." *Dang*, 422 F.3d at 810.  "The decision to impose such sanctions is within the exclusive province of the jury." *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991) (citation omitted); *see Larez v. City of Los Angeles*, 946 F.2d 630, 649 (9th Cir. 1991) (explaining that a jury's decision to award punitive damages "represents its discretionary moral judgment about [the defendant's] culpability") (citing *Wade*, 461 U.S. at 52).

The jury here awarded $300,000 in punitive damages after being instructed as follows, in relevant part:

> You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

Dkt. 176 at 14, Instruction No. 12.[13]  Officer Hodges argues that the "issue of punitive damages should not have been submitted to the jury" because there was "no evidence that [he] acted with malice or in reckless disregard to [Hernandez's] Fourth Amendment rights."  Dkt. 200 at 26.  Officer Hodges further argues that punitive award is "subject to being stricken" because "the

---

[13] There is no dispute that this instruction on punitive damages, which mirrors Ninth Circuit Model Civil Jury Instruction 5.5 and was jointly proposed by the parties, *see* Dkt. 151 at 8, states the correct legal standard for punitive damages under § 1983.

United States District Court
Northern District of California

1  jury's finding of failing to intervene is fundamentally inconsistent with a finding needed per the

2  punitive damages instruction, which requires significantly malicious and oppressive conduct." *Id*.

3  Neither contention has merit.

4      Initially, the Court notes that at no point before the verdict did Officer Hodges argue that

5  there was insufficient evidence to send the issue of punitive damages to the jury.[14]  In fact, Officer

6  Hodges not only jointly proposed the instruction on punitive damages, but his counsel also

7  reminded the jury during closing argument that police officers who violate the Fourth Amendment

8  are "subject to potentially civil damages, which is what this is all about. *There are potential*

9  *punitive damages, which are alleged in this case*."  Tr. at 677:14–678:3 (emphasis added).  At

10  trial, Hernandez's theory for awarding punitive damages was that Officer Hodges exhibited

11  complete indifference to (i.e., recklessly disregarded) Hernandez's safety and Fourth Amendment

12  rights by taking no action whatsoever to intervene in Deputy Battles's use of excessive force

13  against a prone and unresponsive Hernandez, when Officer Hodges could have intervened and

14  knew he had a mandatory duty to do so.  Considering the evidence in the record supporting the

15  jury's findings that Officer Hodges was both aware of a need to intervene and had a realistic

16  opportunity to do so, and given the undisputed fact that Officer Hodges did nothing to try to stop

17  Deputy Battles's uses of force against Hernandez as he lay face down on the ground, the Court

18  cannot say that the jury's award of punitive damages is against the great weight of the evidence.

19      Moreover, because there is evidence to support the imposition of punitive damages based

20  on a finding of reckless disregard, Officer Hodges's other argument for why the punitive award

21  should be stricken—because the "jury's finding of inaction on the part of Officer Hodges (failure

22  to intervene), cannot be said to be malicious or oppressive conduct," Dkt. 206 at 19—fails.  As

23  noted, the jury had discretion to award punitive damages if it found that Officer Hodges's failure

24

25  ------

[14] Because Officer Hodges did not raise insufficiency of evidence as to punitive damages in his
pre-verdict Rule 50(a) motion, he is precluded from challenging the punitive award in his Rule
26  50(b) motion.  *See Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("A party
cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b)
27  that it did not raise in its pre-verdict Rule 50(a) motion."); *see id.* at 762 n.10 (holding that the
defendant's "right to challenge the punitive damages award for lack of evidence of malice was lost
because that challenge could have been raised prior to verdict in a Rule 50(a) motion and it was
28  not").

to intervene was "malicious, oppressive or in reckless disregard of [Hernandez's] rights."  Dkt.
176 at 14, Instruction No. 12; *see Dang*, 422 F.3d at 810 (discussing the three "separate and
distinct bases for an award of punitive damages under § 1983").  Thus, even assuming Officer
Hodges is correct that his failure to intervene did not amount to malicious or oppressive conduct
(which Hernandez did not argue at trial), punitive damages were nevertheless appropriate because
there was sufficient evidence for the jury to find that Officer Hodges recklessly disregarded
Hernandez's Fourth Amendment rights and safety.  "Once the threshold standard for punitive
damages is met . . . , [a court] cannot review the jury's decision to award punitive damages, which
represents its discretionary moral judgment about [the defendant's] culpability, other than for
gross excessiveness," which Officer Hodges has not argued here.  *Larez*, 946 F.2d at 649 (internal
citation omitted).  Beyond his contentions that there was "no evidence" to support any award of
punitive damages in the first instance, which the Court rejects, Officer Hodges does not otherwise
address, let alone challenge as grossly excessive, the amount of the punitive award.  Nor does the
punitive award appear to be grossly excessive.  Because Officer Hodges has not met the "stringent
standard" that applies when a Rule 59 motion is based on insufficiency of the evidence, *see Pape
Lift*, 115 F.3d at 680, his motion for a new trial as to punitive damages is denied.

## IV.   CONCLUSION

For the reasons stated above, Officer Hodges's renewed motion for judgment as a matter of
law and his alternative motion for a new trial or remittitur are denied.

**IT IS SO ORDERED.**

Dated: August 17, 2023

ALEX G. TSE
United States Magistrate Judge